## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DOLORES M. ROBINSON,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

Defendant.

No. 16 C 5152

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Dolores M. Robinson ("Plaintiff" or "Ms. Robinson") seeks review of

the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social

Security ("the Commissioner"),[1] denying Plaintiff's application for disability

insurance benefits under Title II of the Social Security Act. The parties filed cross-

motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.

(Dkts. 12, 18).[2] For the reasons stated below, Plaintiff's motion for summary

judgment is GRANTED and the Commissioner's is DENIED. The decision of the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule
25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for
Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action
needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the
Social Security Act, 42 U.S.C. § 405(g).
[2] Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the
jurisdiction of the United States Magistrate Judge for all proceedings, including entry of
final judgment. (Dkt. 8).

Commissioner is REVERSED, and the case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

## I.    PROCEDURAL HISTORY

This case is on appeal to the district court for the second time. On May 29, 2012, the ALJ issued a written decision denying Plaintiff's application for benefits based on a finding that she was not disabled under the Social Security Act (the "Act"). On May 21, 2014, Judge Cox issued a Memorandum Opinion and Order (hereafter, the "May 2014 Order") remanding the ALJ's decision for further proceedings. (R. at 617–40). Judge Cox concluded that the residual functional capacity ("RFC") determination as to Ms. Robinson's mental ability was supported by substantial evidence, but remand was proper "for further assessment of Ms. Robinson's credibility in light of her need to elevate her feet and her testimony regarding fatigue, and for reconsideration of Ms. Robinson's RFC to the extent that it is impacted by the ALJ's credibility determination." (*Id*. at 638–40).

On remand, the Social Security Appeals Council instructed the ALJ to offer Plaintiff a hearing and "take any further action needed to complete the administrative record." (*Id*. at 648). The ALJ noted that she was directed to give "further consideration only for credibility of two allegations: (1) claimant's testimony that she needed to elevate her legs; and (2) claimant's complaints of fatigue." (*Id*. at 523). On November 13, 2014, the ALJ held a new hearing with Ms. Robinson, Ms. Robinson's attorney, and vocational expert (VE) Pamela Tucker. (*Id*. at 545–77). On December 8, 2014, the ALJ again found Plaintiff not disabled and

denied benefits. (*Id*. at 538). Following the five-step sequential evaluation process required by the Social Security Regulations (20 CFR § 404.1520), the ALJ initially noted that Ms. Robinson met the insured status requirements of the Act through December 31, 2011. (*Id*. at 525). At step one, the ALJ found that Ms. Robinson had not engaged in substantial gainful activity since the alleged onset date of July 31, 2010. (*Id*.) At step two, the ALJ found that Ms. Robinson had the severe impairments of fibromyalgia, obesity, and major depressive disorder. (*Id*.) At step three, the ALJ found that Ms. Robinson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1. (*Id*. at 526).

Before step four, the ALJ found that Ms. Robinson:

> had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). She can lift and carry up to twenty-five pounds frequently and fifty pounds occasionally. She can stand and/or walk about six hours in an eight-hour workday. She can sit about six hours in an eight-hour workday. The work should involve: simple instructions, routine tasks, occasional changes in the work setting, and simple work-related decisions.

(*Id*. at 528).[3] Based on this RFC, the ALJ determined at step four that Ms. Robinson was able to perform past relevant work as a carton machine feeder, a medium, unskilled job. (*Id*. at 536, 550). At step five, the ALJ alternatively found that Ms. Robinson could perform other work existing in the national economy including laundry worker and cleaner. (*Id*. at 538). Therefore, the ALJ concluded that Ms. Robinson was not disabled under the Act. (*Id*.) The Appeals Council denied

---

[3] This RFC is the same as the one in the ALJ's first decision. *See* R. at 630–31.

Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner (*id*. at 507–10), and Plaintiff now seeks review in this Court pursuant to 42 U.S.C. § 405(g).

## II. BACKGROUND[4]

Ms. Robinson applied for disability insurance benefits on August 10, 2010. She was nearly 55 years old on her claimed onset date of July 31, 2010 and 56 years old on her last insured date of December 31, 2011. (Dkt. 13; R. at 537). Ms. Robinson previously held jobs including transcriptionist and cardboard machine feeder. (R. at 618). The ALJ found Ms. Robinson had the severe impairments of fibromyalgia, obesity, and major depressive disorder. (*Id*. at 525).

At the hearing before the ALJ on November 13, 2014, Ms. Robinson testified that during the relevant time period in 2010 and 2011, she was elevating her legs about three times a day. (*Id*. at 552). When she did chores at home, she would have to stop and put her legs up every two to three hours. (*Id*. at 553). Ms. Robinson was not sure why she had so much pain until a doctor told her it was due to fibromyalgia. (*Id*. at 554). She also testified that she had fatigue and was not sure if the cause was her medication or fibromyalgia. (*Id*. at 558–59). She took naps about once a day for two to three hours. In the morning, she was sometimes refreshed and sometimes tired, depending on what she did the day before. (*Id*. at 560).

Fibromyalgia is "a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues. Researchers believe

---

[4] This Court adopts and incorporates the factual background in the May 2014 Order. (R. at 618–24).

that fibromyalgia amplifies painful sensations by affecting the way your brain processes pain signals." Mayo Clinic: Fibromyalgia.[5] In July 2012, the Social Security Administration (SSA) issued guidelines describing fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 SSR LEXIS 1. One indicator of fibromyalgia is a "history of widespread pain...in all quadrants of the body, [which] may fluctuate in intensity and may not always be present."[6]

## III.    STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Counsel denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). The district court reviews the decision of the ALJ, limiting its review to a determination of whether the ALJ's findings of fact are supported by substantial evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). In addition, the ALJ must explain her analysis of the evidence "with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). When the ALJ recommends a denial of benefits,

---

[5] Online at http://www.mayoclinic.org/diseases-conditions/fibromyalgia/home/ovc-20317786, last visited May 15, 2017.
[6] "Somatic symptoms" of fibromyalgia include muscle pain, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, insomnia, depression, nervousness, chest pain, blurred vision, shortness of breath, loss of appetite, frequent urination, or bladder spasms. SSR 12-2p, *8.

the ALJ "must first build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations and citation omitted). This means that the ALJ "must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Id*. A Commissioner decision that lacks evidentiary support or adequate discussion of the issues will be remanded. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## IV.  DISCUSSION

Plaintiff argues that the ALJ improperly discredited Plaintiff which resulted in an inaccurate RFC. (Dkt. 13 at 13–15).[7] "[A]lthough we defer to an ALJ's credibility finding that is not patently wrong,…an ALJ still must competently explain an adverse-credibility finding with specific reasons supported by the record. An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (internal citations and quotations omitted).[8]

Under the Social Security regulations, symptoms including pain are evaluated using a two-step process. The ALJ: (1) considers whether there is an

[7] The Commissioner's contention that Plaintiff "waived" the argument that the RFC was incorrect because the ALJ misjudged Plaintiff's credibility (Dkt. 19 at 13, n. 7) is unconvincing since that is Plaintiff's main argument.
[8] In March 2016, the SSA eliminated the term "credibility" to emphasize that "subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p.

underlying medically determinable impairment that could reasonably be expected to produce the symptoms; and (2) makes a finding on the credibility of the claimant's statements, considering of the entire case record. S.S.R. 96-7p. Here, the ALJ determined that Ms. Robinson's medically determinable impairments could reasonably be expected to cause the alleged symptoms but Ms. Robinson's statements about the intensity, persistence and limiting effects of the symptoms were "not entirely credible." (R. at 530).

Because fibromyalgia "often produce[s] pain and other symptoms out of proportion to the 'objective' medical evidence, it is crucial that the disability adjudicator evaluate credibility with great care and a proper understanding of the disease[]." *Johnson v. Colvin*, No. 13-C-1023, 2014 U.S. Dist. LEXIS 82830, at *1 (E.D. Wis. June 18, 2014) (citing *Sarchet v. Chater,* 78 F.3d 305 (7th Cir. 1996)). In this case, the ALJ did not evaluate Plaintiff's claims with sufficient care and understanding of fibromyalgia and in light of the record as a whole. Because the ALJ's credibility determination was based on factors that were not properly analyzed and/or not supported by substantial evidence, remand is warranted. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).

### A. Plaintiff's Need to Elevate Her Legs.

The ALJ did not credit Plaintiff's allegations about her need to elevate her feet because Plaintiff: (1) did not tell her doctors about the need to elevate her legs and her doctors did not advise her to do so; (2) did not generally complain about pain due to fibromyalgia or about pain in her calves, thighs, or toe; (3) engaged in

daily activities inconsistent with her need to elevate her legs; (4) has been "treated only with medications for her fibromyalgia, and she does quite well," and received "minimal treatment" for fibromyalgia; (5) did not follow up with a podiatrist; and (6) had examinations that were "normal". (R. at 533–35).

### i. Lack of records about Plaintiff's need to elevate her legs

The lack of medical record specifically referencing Plaintiff's need to elevate her legs is the most convincing reason offered by the ALJ to discredit Plaintiff. While there are numerous records of Plaintiff reporting pain generally as well as specific pain, numbness, and cramping in her legs and feet, and that she had to rest by sitting or lying down due to pain in her legs (*see e.g.* R. at 197, 201, 215, 257, 300, 363, 403, 530), the Court has not identified a record specifically referencing Plaintiff's need to elevate her legs. The Court is most concerned, however, that the ALJ never asked Plaintiff at the hearing why she did not report the need to elevate her legs to her doctors, or otherwise seek to develop the record on this issue with additional information or medical expertise. *See Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("The ALJ [] has a basic obligation to develop a full and fair record."); *Smith v. Astrue*, 467 F. App'x 507, 511 (7th Cir. 2012) ("while the record on this issue [of plaintiff's need to elevate her leg] is relatively sparse, to the extent the ALJ needed a fuller record to make her decision, she had a duty to develop it."); *Hall v. Colvin,* 778 F.3d 688, 691 (7th Cir. 2015) ("the [ALJ] could have resolved her doubts [about claimant's pain] by ordering an MRI or directing a further examination by a medical expert.").

Plaintiff argues, relying on *Terry v. Astrue*, 580 F.3d 471 (7th Cir. 2009), that she did not have to report the need to elevate her legs to her doctors. The Commissioner argues that *Terry* does not apply because in that case, the records showed claimant did tell her doctors about the side effects. The Seventh Circuit Court of Appeals noted that even without this record, "we are skeptical that a claimant's failure to identify side effects undermines her credibility." *Id*. at 477. The Court also addressed the lack of prescription for a walker, finding that "given her fibromyalgia and history of back surgery, Terry's use of a walker, even if a doctor did not recommend it, is not on its own enough to make her testimony regarding her pain unbelievable." *Id*. at 447–78. The Court finds the reasoning of the *Terry* court applicable here: the lack of record of Plaintiff reporting the need to elevate her legs to doctors does not alone undermine her testimony. It is possible that Ms. Robinson's doctors never asked her about it and/or that she believed that elevating her legs was simply a fact of her life and she "saw no benefit in reporting [it] to the doctors because there was nothing to be done about the problem." *Stahl v. Colvin*, 632 F. App'x 853, 860 (7th Cir. 2015). Given Plaintiff's other serious impairments, namely depression, it is not surprising that during some appointments, particularly with her psychiatrist, the focus was on how she was managing her emotional, rather than physical, challenges. Whatever the reason, the ALJ did not give Plaintiff the opportunity to explain. Therefore, the Court is not convinced that the lack of documentation alone, without any effort by the ALJ to develop the record

through more information or Plaintiff's testimony, undermines Plaintiff's credibility.

### ii. *Plaintiff's complaints of pain*

The ALJ concluded that Plaintiff's lack of reports of pain was not consistent with her need to elevate her legs. (R at 533–34) ("when she sees her psychiatrist, she generally does not report pain due to fibromyalgia"; she did not complain to any other doctors (other than her podiatrist) about her problem with her toe; and she did not complain "specifically of pain in her calves or thighs").

As an initial matter, the "absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." *Ghiselli*, 837 F.3d at 777; *see also Hall*, 778 F.3d at 691 (complaints of pain need not be confirmed by diagnostic tests to be credible). Moreover, the record shows that Ms. Robinson *did* report pain to her doctors. The ALJ acknowledged as much, noting Plaintiff's complaints of pain all over her body, that she was treated for toe pain in October 2010[9], she told consultative medical examiner, Dr. Shah, in November 2010, about her history of pain in her legs and all over, and reported increased fibromyalgia pain in January 2011. (R. at 530). There are other records which the ALJ mischaracterized or did not discuss. The ALJ represented Dr. Shah's examination showed that she was able to toe walk (*id.*), but his report stated Ms. Robinson could not toe walk *because of pain* in her right toe. (*Id.* at 365). A DDS

---

[9] The Court notes that this record also shows Ms. Robinson had joint degeneration and may need surgery. Ms. Robinson also told her podiatrist she had increasing pain over the last four years and sometimes has "10/10" pain. (R. at 354).

report Plaintiff completed explained that because of fibromyalgia, "the pain in my legs and feet is so bad I can't squat or kneel without tremendous pain," and "if I'm on my feet too much during the day my legs and feet hurt so much at night I have trouble falling asleep." (*Id*. at 196–97). Psychiatrist Dr. Hussain noted in November 2008 that she "continues to have a lot of pain." (*Id*. at 310). In January 2010, Plaintiff reported that her fibromyalgia is "really bad" and in November 2010, that Cymbalta did not help her pain. (*Id*. at 414). These records corroborate Plaintiff's testimony about her pain. *See Hall*, 778 F.3d at 691 (several doctors' notations that claimant was in pain when examined supported claimant's testimony).

In January 2011, Nurse Moynihan completed a form noting that Ms. Robinson reported "unbelievable pain" when she attempted to kneel, crouch or crawl and had pain when attempting manipulative movements. (R. at 386–98). Moynihan found that Ms. Robinson was able to occasionally and frequently lift or carry 10 pounds and stand or walk at least 2 hours in an 8-hour workday. (*Id*. at 386). The ALJ gave Nurse Moynihan's opinion "little weight" and Dr. Boll's opinion "no weight" because he merely signed off on Nurse Moynihan's report. (*Id*. at 536). Even if the ALJ was correct to give this report little or no weight, it should have been considered as part of the evidence of Ms. Robinson's limitations and at least as corroboration of her testimony about her pain and limitations. Indeed, SSA guidance on fibromyalgia states that evidence from medical sources who are not "acceptable medical sources" nevertheless may be considered to "evaluate the severity and functional effects of the impairment(s)." SSR 12-2p.

On the whole, the ALJ's concern appeared to be that Plaintiff was not reporting pain with the frequency or specificity the ALJ would have expected. However, fibromyalgia pain may fluctuate in intensity and may not always be present. SSR 12-2p. It is not surprising that Plaintiff may have had better days with little or no pain. And similar to ALJ's concern with the lack of reports of leg elevation, the ALJ did not give Plaintiff the opportunity to explain.

### iii. Daily activities

In the May 2014 Order, Judge Cox stated that it was improper for the ALJ to use Ms. Robinson's reports of daily activities to completely discredit her allegations of fatigue without providing a reason. (R. at 638). On remand, the ALJ pointed to Ms. Robinson's daily activities to undermine her allegations about both her fatigue and the need to elevate her legs. (*Id*. at 533–34). The ALJ described Ms. Robinson as both "rather active" and "very active." This characterization was based on Ms. Robinson's activities of spending time with friends, gardening, going for walks, running errands, driving her brother-in-law, and sewing. (*Id*. at 534–35). The ALJ acknowledged Ms. Robinson's testimony that she had to take breaks while doing chores and that her gardening was minimal, but nevertheless concluded that the "medical records support a much more active lifestyle than she alleges." (*Id*. at 534). But the ALJ left out other limitations described by Ms. Robinson, including that she cared for her plants while sitting in her kitchen, her family members helped with her garden and household chores, family members carry the groceries in the house for her and after shopping she has to go to bed for at least an hour, the heaviest

thing she could lift was a gallon of milk, with two hands, and she drove her brother-in-law about once a week to meetings. (*Id*. at 556–69).[10]

The ALJ relied, as she did in her first decision, on Ms. Robinson's daily activities without exploring or describing the duration, frequency, or demands of the activities. The ALJ did not explain how these activities are inconsistent with Plaintiff's testimony about her need to elevate her legs or to take naps. Relying on Ms. Robinson's daily activities to undermine her credibility was error, particularly in light of the differences between such activities and those of a full-time job. *See Thomas v. Colvin,* 826 F.3d 953, 961 (7th Cir. 2016) (invoking plaintiff's activities of daily living to discount her testimony that her limitations are more than minimal "is problematic because her ability to do limited chores, cooking, and self-care says little about her ability to perform the tasks of a full-time job"); *Childress v. Colvin*, No. 16-1601, 845 F.3d 789, 792 (7th Cir. 2017) ("failing to recognize the difference between performing activities of daily living with flexibility (and often with help from family and friends) and performing to the standards required by an employer is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.") (internal citations and quotations omitted); *Cf. Parker v. Colvin*, 660 F. App'x 478, 483 (7th Cir. 2016) (affirming denial of benefits to claimant with degenerative disc disease and fibromyalgia, finding that the ALJ's

---

[10] As for Plaintiff's walks, the ALJ did not explore how often or how long these walks were, or account for the fact that the walks might not have been an indication of a particularly "active" lifestyle, but rather, the result of Plaintiff's attempt to comply with medical advice to take walks in order to manage her fibromyalgia. (*see* R. at 626).

credibility determination was not patently wrong "especially considering that [the ALJ] imposed a litany of functional limitations.").

### iv. *Plaintiff's fibromyalgia and treatment for it*

The ALJ did not build a logical bridge from the medical evidence to her conclusion that Plaintiff's treatment for fibromyalgia was "minimal" and "she does quite well." The ALJ did not sufficiently explain how the treatment undermined Plaintiff's credibility about her symptoms and need to elevate her legs. The ALJ's decision demonstrates a lack of appreciation for the nature of fibromyalgia. The Seventh Circuit has stated that fibromyalgia symptoms are "entirely subjective," "[t]here are no laboratory tests for the presence or severity of fibromyalgia," and there is no cure. *Sarchet*, 78 F.3d at 306. In addition, "symptoms, signs, and contemporaneous conditions" associated with fibromyalgia include "pain all over," muscle aches, stiffness, fatigue, and depression. *Id.*; *Thomas*, 826 F.3d at 959.

In finding that Plaintiff did "quite well," the ALJ also acknowledged records showing Plaintiff's reports of increased fibromyalgia pain and that she switched medications because they aggravated her mental impairments or were too costly. (R. at 530). Other records were not addressed by the ALJ, such the "fibromyalgia impact questionnaire" that Plaintiff completed, in which she reported that out of the past week, she felt good zero out of seven days, she missed three out of seven days of work including housework because of her fibromyalgia, and felt tired, stiff, and in pain. (*Id.* at 394–95). An ALJ need not discuss every piece of evidence in the record, but should not analyze certain evidence without "confront[ing] the evidence that

does not support her conclusion and explain why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

Thus the ALJ did not sufficiently explain how Plaintiff's supposedly minimal and effective fibromyalgia treatment was inconsistent with her testimony. Even if the record supported the conclusion that Plaintiff responded well to her fibromyalgia treatment, there can be "great distance" between an individual who responds to treatment and one who is able to enter the workforce. *See Scott v. Astrue,* 647 F.3d 734, 739–40 (7th Cir. 2011).

### v. *Follow up with doctors*

The ALJ also disbelieved Plaintiff because she did not "follow-up with a podiatrist or complain to any other doctors about [the] problem with her toe." (R. at 534). There are records showing that treatment to Ms. Robinson was terminated because she did not have Medicaid and demonstrating her financial difficulties in paying for medication. (R. at 286, 478). The ALJ did not account for these records or ask the Plaintiff about any barriers to seeking or following up with treatment. The failure to explore the reasons was error. *See Thomas*, 826 F.3d at 961 (ALJ's conclusion from gap in treatment that plaintiff's symptoms were not as severe as she alleged, without exploring the reasons for not seeking treatment, was error).

### vi. *"Normal" examination findings*

The ALJ pointed out that during examinations, Plaintiff's gait was normal, with no swelling or use of assistive device. Relying on the November 10, 2010 report of the consulting examiner, the ALJ stated that "findings on examination as well as

at the consultative examination were generally within normal limits." (R. at 533). But Dr. Shah's report does not conclude that all functions are "normal." Dr. Shah found Ms. Robinson had full range of motion in all joints, but had tenderness in her right big toe and could not toe walk because of pain in that toe. (*Id.* at 365–66). Further, the ALJ does not explain how normal range of motion or normal gait is inconsistent with the need to elevate her legs. Because pain caused by fibromyalgia is not limited to one area, can manifest in the joints, muscles, tendons, or nearby soft tissues, and is not always present (SSR 12-2p), having normal gait or range of motion would not seem to foreclose other pain resulting in Ms. Robinson's need to elevate her legs several times a day.[11]

### B. Plaintiff's Fatigue.

The ALJ acknowledged that fatigue and/or difficulty with sleep can be a symptom of fibromyalgia and/or a side-effect of medication. (R. at 534). But the ALJ stated that she did not credit Plaintiff's allegations about her significant fatigue requiring frequent naps because: (1) the medical records contained only "isolated complaints of side effects" of medication and when Plaintiff did complain of side effects, "medications are adjusted," (2) although the records contained some reference to Plaintiff taking naps, they "never documented that [Plaintiff] had to nap so frequently as she alleges," (3) the records showed Plaintiff was "very active" during the relevant time period, (4) the records showed, with only a couple of exceptions, that Plaintiff "repeatedly states she is sleeping well," and (5) Plaintiff's

---

[11] The ALJ also discussed Plaintiff's mental examinations, concluding that Plaintiff's depression was "generally stable" (R. at 533), but did not explain the relevance of this discussion to the issues here.

doctors did not note that she looked tired or that she had trouble concentrating or focusing or that she missed appointments because she was too tired or overslept. (*Id.* at 534–35).

The first three reasons are similar to the reasons the ALJ offered regarding Plaintiff's claim that she needed to elevate her legs, which the Court has discussed in (IV)(A), *supra*. Indeed, regarding the ALJ's conclusion that there were only "isolated complaints of side effects," the ALJ failed to appreciate the possibility that the side effects varied or that she saw no benefit in reporting them: "We [have] held that a failure to report side effects to doctors does not, in and of itself, discredit complaints of 'disabling pain.'" *Stahl*, 632 F. App'x at 860. The ALJ's statement that Plaintiff reported taking naps but not so frequently as she alleges is similar to the ALJ's concern about Plaintiff's pain, implying that she did not report it frequently or specifically enough. The characterization of Plaintiff as "very active" is also addressed above.

The ALJ also found that Plaintiff "repeatedly states she is sleeping well." Plaintiff did report being tired and fatigued, however. She reported this during an examination at Metropolitan Family Services in 2009 (R. at 346), on her "fibromyalgia impact questionnaire" (*id.* at 394–95), to the consulting psychiatrist ("she is fatigued," "spends much for her time in bed" and "has memory problems") (*id.* at 359), and to Dr. Blount in August 2011 (reporting "sleeping poorly" and "secondary insomnia") (*id.* at 477). A psychiatric review noted that Ms. Robinson had sleep disturbance and decreased energy. (*Id.* at 371). Most importantly, the ALJ

did not explain how sleeping well at night is inconsistent with daytime fatigue requiring naps. *See Ripley v. Colvin*, No. 12 C 9462, 2014 U.S. Dist. LEXIS 74334, at *26 (N.D. Ill. June 2, 2014) (ALJ did not adequately discuss the credibility of allegations about fatigue).

Finally, the ALJ relied on a lack of documented doctor observations that Ms. Robinson looked tired or had trouble concentrating or making appointments. The ALJ does not explain how a lack of notation that Plaintiff "looks tired" undermined her statements and testimony that she was fatigued. Furthermore, there are records of missed appointments (though the reason is generally not recorded). (*see* R. at 292, 301, 307, 317, 321). In addition, treating psychiatrist Dr. Blount rated Plaintiff's memory for carrying out detailed instructions and ability to maintain attention and concentration for extended periods as only "fair" (on a scale of excellent, good, fair and poor). (*Id*. at 409-10). The ALJ relied on this report by Dr. Blount to determine Mr. Robinson's mental RFC—limited to simple instructions and routine tasks—which the district court previously upheld. (*Id*. at 639).

### C. Summary

In sum, the ALJ's errors were not harmless because they informed the ALJ's decision with respect to Ms. Robinson's RFC and ability to perform her past work and other jobs in the national economy.[12] The ALJ was previously directed to address two specific issues—Plaintiff's need to elevate her legs and her fatigue. To

---

[12] The RFC requires Plaintiff to do medium work and "lift and carry up to twenty-five pounds frequently and fifty pounds occasionally, [and] stand and/or walk about six hours in an eight-hour workday." Because of Plaintiff's age, she argues that if she were limited to unskilled light or sedentary work, the Medical-Vocational Guidelines would mandate a finding that Plaintiff is disabled. (Dkt. 12 at 6; *see also* R. at 571).

resolve any doubts about Plaintiff's claims about these issues, the ALJ should have developed the record, including by asking Plaintiff directly. On remand, the ALJ shall promptly take any action in order to ensure a full and fair record, hold another hearing, reassess Plaintiff's claims regarding her need to elevate her legs and her fatigue, and evaluate all limitations that arise from severe and non-severe medically determinable impairments to determine her RFC.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [12] is **GRANTED**, and Defendant's Motion for Summary Judgment [18] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated: May 19, 2017          E N T E R:

_____
MARY M. ROWLAND
United States Magistrate Judge